```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                         HAMMOND DIVISION


DEBRA ANN HAILEY,              )
                               )
          Plaintiff            )
                               )
     v.                        )    Case No. 2:06 cv 16
                               )
MICHAEL J. ASTRUE,[1]          )
Commissioner of Social Security)
                               )
          Defendant            )
```

OPINION AND ORDER

This matter is before the court on the plaintiff's petition for judicial review of the decision of the Commissioner of Social Security filed by the plaintiff, Debra Ann Hailey, on January 13, 2006. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

Background

The plaintiff, Debra Ann Hailey, initially applied for Supplemental Security Income and Disability Insurance Benefits on June 5, 2002, alleging a disability onset date April 29, 2002. (Tr. 57B) The claim was denied initially on February 7, 2003 and upon reconsideration on January 12, 2004. (Tr. 22, 25) Hailey requested a hearing before an Administrative Law Judge ("ALJ") on February 12, 2004. (Tr. 36) A hearing before ALJ Paul Armstrong was held on August 17, 2005, at which vocational expert Thomas Grzesik and medical expert Daniel Girzadas testified. (Tr. 287)

---

[1] In accordance with Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue, who became Commissioner of Social Security on February 12, 2007, is automatically substituted as the defendant in this action.

On September 9, 2005, the ALJ denied Hailey's application by written decision. (Tr. 9) Following a denial of her request for review by the Appeals Council on November 17, 2005, Hailey filed a complaint in this court on January 13, 2005.

Hailey was 44 years old at the time of the hearing before ALJ Armstrong. (Tr. 13) Hailey held a variety of jobs as a receptionist and in data entry, and until her knee injury, as a PBX operator at a hospital. (Tr. 80) This job included operating the hospital's switchboard system, serving as a receptionist, and paging doctors. (Tr. 292-93)

On April 29, 2002, Hailey fell when her foot was caught in a depression. (Tr. 102) She injured her left knee and was treated initially in the emergency room at St. Margaret Mercy Hospital. (Tr. 102-105) At St. Margaret, Hailey underwent a series of X-rays that revealed no dislocation of her pelvis, lower leg or femur, but revealed an anterior dislocation of her left knee with no associated fracture. (Tr. 110-113) Hailey was diagnosed with "left total knee disruption" and transferred to Methodist Hospital. (Tr. 185)

At Methodist, Hailey underwent an MRI that showed a defect in "anterior cruciate suggesting tear." (Tr. 225) Hailey's injury immediately was treated surgically by Dr. Carl Moultrie II, who performed a closed reduction dislocation. (Tr. 191) Hailey's post operative diagnosis was of an anterior dislocation of the left knee and neuropraxia of the peroneal nerve. (Tr. 191) Following the surgical reduction, Dr. Moultrie reported that the disloca-

2

tion was reduced and the knee was satisfactorily aligned. (Tr. 192)

On May 10, 2002, Hailey began treatment with Dr. John Diveris, who recommended that Hailey undergo an open, lateral collateral repair of her knee injury and wear an AFO brace to address the peroneal nerve palsy. (Tr. 172) Dr. Diveris performed this surgery on May 13, 2002. (Tr. 115-16) At a May 16 follow-up exam, Dr. Diveris reported satisfactory recovery and indicated that Hailey was to continue weight-bearing exercises and return in a week to have sutures removed. (Tr. 169) According to Dr. Diveris' notes, Hailey continued to improve, and by May 30, 2002, demonstrated "excellent stability." (Tr. 166, 168)

On May 30, Hailey also saw her regular physician, Dr. Paul C. Okolocha, who prescribed pain medication. (Tr. 167) Hailey also began physical therapy at Illiana Surgery and Medical Center on June 4, 2002. (Tr. 232) However, on June 28, 2002, Dr. Diveris noted that Hailey had "lost one grade" and "needs to work aggressively on strength and [range of motion]." (Tr. 164)  By July, Dr. Diveris stated that Hailey was progressing satisfactorily despite what he described as a habitual abnormal gait. (Tr. 165)

In July 2002, Hailey completed a form regarding her daily activities in which she indicated that she regularly did her prescribed exercises but required assistance bathing and navigating stairs. (Tr. 73) She further stated that her ability to drive was limited because of her difficulty bending her knee and the side effects of her medications. (Tr. 73) In August, a Social

3

Security Administration employee contacted Hailey to inquire about indications in her records that she may have experienced depression. (Tr. 79) Hailey explained that these symptoms had accompanied her injury but she was not taking medication and did not feel that she needed medication. (Tr. 79)

The record indicates no further treatment until January 2003, at which time Hailey explained that her treatment ceased due to a lack of insurance coverage. (Tr. 76) Dr. Suresh Mahawar completed a functional capacity evaluation on January 24, 2003, approximately eight months after her injury. (Tr. 138-140) He concluded that Hailey was able to walk up to 200 feet without an assistive device but might require a cane for longer distances. (Tr. 138) Dr. Mahawar found that Hailey experienced mild difficulty walking and getting on and off the exam table and was unable to squat or hop on one foot. (Tr. 139) He concluded that she experienced "both knee pain with mild degenerative joint disease" and obesity. (Tr. 139) An x-ray taken that day of the left knee also indicated mild degenerative joint disease and a small joint effusion, showing no sign of fracture or dislocation. (Tr. 141)

A physical residual functional capacity evaluation completed in February 2003, indicated that Hailey retained the capacity to lift 20 pounds occasionally and to lift 10 pounds frequently. (Tr. 143) Hailey further retained the capacity to stand/walk at least two hours in an eight-hour day and sit for up to six hours,

4

and she otherwise demonstrated only occasional limitation. (Tr. 142-149)

On October 5, 2003, Hailey injured her right ankle when she fell on a stairway. (Tr. 152) Hailey was treated at the Methodist Hospital, where an x-ray revealed soft tissue damage but no acute fracture or dislocation. (Tr. 160) Hailey was treated with an Ace wrap, crutches, and prescribed Darvocet. (Tr. 155-158)

Approximately one month later, Hailey reported that she experienced difficulty bending and sitting for long periods of time. (Tr. 90) She further stated that standing caused her ankle and feet to swell and that she sometimes required assistance getting in or out of a bath tub. (Tr. 90) By June 2004, Hailey described further diminished capabilities, stating that she could not walk any distance without her knee swelling, that she had to move often or prop up her legs, and that navigating stairs and rising from a seated position had become increasingly difficult. (Tr. 94-100)

In October 2004, Hailey was examined at the East Chicago Community Health Center. The record from the visit indicated that Hailey was taking no medications at the time. (Tr. 239) Obesity was noted as well as mild deformity of her left knee (Tr. 239) Hailey underwent blood tests which indicated diabetes mellitus. X-rays ordered by Dr. Luis E. Manyari and taken in December 2004, showed moderate degenerative changes in Hailey's left knee and minimal degenerative arthritic changes in her right hip. (Tr. 266-267)

5

Dr. Manyari also completed a Medical Opinion Re: Ability To Do Work Related Activities and indicated that Hailey occasionally and frequently could lift 10 pounds and that her maximum ability to stand, walk, or sit was two hours. (Tr. 250) Dr. Manyari also indicated that she experienced limits to her fine manipulation capabilities due to carpal tunnel syndrome. (Tr. 250-251) However, test results from St. Catherine Hospital in August, 2005, showed "only mildly slowed left ulnar nerve conductions" and "no definite evidence of carpal tunnel." (Tr. 268) An EMG of her spine the following day indicated "mild lipping" but was otherwise unremarkable. (Tr. 271-273)

At the hearing before ALJ Armstrong, Hailey testified that she had difficulty sitting for more than 30 minutes before needing to stand in order to relieve back pain. (Tr. 298) She also testified that standing caused her knees to get stiff and her legs to swell. (Tr. 298) As a result, she reported that throughout the day she alternated between sitting, standing, and laying down. (Tr. 298) Hailey also testified that she no longer drove, cooked infrequently, required assistance with shopping, and no longer pursued her hobby of crocheting. (Tr. 301-302) She stated that she completed a crochet project a few months before the hearing and that it took three weeks to recover. (Tr. 302)

Dr. Daniel V. Girzadas, who testified as a medical expert at the hearing, examined the records regarding Hailey's knee injury, leg and hip x-rays, and current medication. (Tr. 313-14) Dr. Girzadas testified that Hailey did not meet a Social Security

6

listing requirement and stated that her RFC should reflect the ability to lift 10 pounds occasionally or frequently. (Tr. 315) He testified that Hailey could walk two hours in an eight-hour day and sit approximately six hours if provided a sit/stand option. (Tr. 315)

The ALJ next provided the vocational expert, Thomas Grzesik, with a "hypothetical individual limited basically to sedentary exertional duties with a sit/stand option." (Tr. 318) The VE testified that, with such restrictions, the individual could work as a PBX operator, Hailey's past relevant work, and work as a clerk typist or in a general office position. (Tr. 318) The ALJ further limited the hypothetical, asking whether these position would be available to an individual limited to only gross finger manipulation. (Tr. 319) The VE testified that past relevant work would be precluded, but 3,500 hand packager, 4,500 sorter, and 1,500 assembler jobs would remain available. (Tr. 319)

The VE testified that if the hypothetical individual were required to elevate her legs or lie down for as much as 15 minutes per hour, no jobs would be available. (Tr. 319-20) The VE also testified that no work would be available if the individual regularly missed two days of work per month due to the side effects of medication. (Tr. 319)

In his decision denying benefits, the ALJ did not consider Hailey's carpal tunnel syndrome to be severe based on the August 2005 EMG, and Hailey's testimony "that she drives, cooks, cleans, and goes shopping." (Tr. 14) However, the ALJ found that Hailey's

7

arthritis of the left hip and knee, disclocation of the left knee with torn ACL and LCL tendons, and diabetes mellitus were severe impairments. (Tr. 14)

The ALJ afforded Hailey's complaints of lower extremity pain less than full credibility. (Tr. 16) He noted that following her surgery, she went without medical care for approximately two years. (Tr. 16) Further, when she did begin seeing Dr. Manyari, she was taking no medication and was not prescribed any. (Tr. 16) The ALJ further noted that the x-ray evidence showed only mild to moderate abnormalities. (Tr. 16)

The ALJ gave only moderate weight to the evidence from Dr. Manyari and Dr. Okolocha. The ALJ noted that almost all treatment notes from Dr. Okolocha predated Hailey's surgery. (Tr. 16) He stated that Dr. Okolocha's status as a treating physician was "questionable at best." (Tr. 16) Regarding Dr. Manyari, the ALJ felt that his RFC offered no explanation why Hailey could not sit for more than two hours per day and further noted that the evidence did not support Dr. Manyari's limitations based on carpal tunnel syndrome. (Tr. 17)

In support of a sedentary RFC conclusion, the ALJ noted that Dr. Manyari did not indicate a need to lie down or to use an assistive device. He also relied on the testimony of Dr. Girzadas to support the finding that Hailey was capable of sedentary work. (Tr. 17) Based on these findings, the ALJ concluded that Hailey was capable of returning to her past relevant work and other semi-skilled positions, including clerk/typist and general office

8

clerk, as well as unskilled jobs as a hand packager, sorter, and mechanical assembler. Accordingly, the ALJ concluded that Hailey was not disabled.

## Discussion

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence.  42 U.S.C. §405(g) ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); **Schmidt v. Barnhart**, 395 F.3d 737, 744 (7th Cir. 2005); **Lopez ex rel Lopez v. Barnhart**, 336 F.3d 535, 539 (7th Cir. 2003).  Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." **Richardson v. Perales**, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 852 (1972) (*quoting* **Consolidated Edison Company v. NLRB**, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed.2d 140 (1938)). *See also* **Jens v. Barnhart**, 347 F.3d 209, 212 (7th Cir. 2003); **Sims v. Barnhart**, 309 F.3d 424, 428 (7th Cir. 2002).  An ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law. **Rice v. Barnhart**, 384 F.3d 363, 368-69 (7th Cir. 2004); **Scott v. Barnhart**, 297 F.3d 589, 593 (7th Cir. 2002).  However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues."  **Lopez**, 336 F.3d at 539.

Disability and supplemental insurance benefits are available

9

only to those individuals who can establish "disability" under the terms of the Social Security Act.  The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. 20 C.F.R. §404.1520, §416.920. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." 20 C.F.R. §404.1520(b), §416.920(b).  If she is, the claimant is not disabled and the evaluation process is over; if she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments which "significantly limits . . . physical or mental ability to do basic work activities."  20 C.F.R. §404.1520(c), §416.920(c).  Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations.  20 C.F.R. §401, pt. 404, subpt. P, app. 1.  If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling.  However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work.  If, at this fourth step, the claimant can perform her past relevant

10

work, she will be found not disabled. 20 C.F.R. §404.1520(e), §416.920(e).  However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience and functional capacity to work, is capable of performing other work and that such work exists in the national economy.   42 U.S.C. §423(d)(2); 20 C.F.R. §404.1520(f), §416.920(f).

Hailey, who appeared with representation through the administrative hearing, proceeds pro se with this appeal. In her opening brief, she raises a series of physical conditions that were not raised prior to this stage and are not supported with additional medical evidence.

The reviewing court may remand a case to the Social Security Commissioner when there exists "new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. §405(g). Such evidence is "new" if it was not in existence or available at the time of the hearing, and "material" if it creates a reasonable probability that it would alter the ALJ's conclusion regarding the "relevant time period encompassed by the disability application under review." ***Schmidt***, 395 F.3d at 741-42; ***Jens***, 347 F.3d at 214.

Hailey stated that at some time in 2005, she pulled a muscle in her back and learned that her 2002 fall had "triggered" a

11

1984-1985 back injury. She stated that a September 2005 MRI lead to a diagnosis of chronic low back pain and the prescription of several pain medications. Hailey also stated that she experienced depression and sleep disorders and has been prescribed sleeping pills and further treatment at "the sleep lab." Finally, Hailey indicated that in 1998 she was diagnosed with Carpal Tunnel Syndrome. Hailey, however, has provided no indication when the pulled muscle or sleep disorder diagnosis occurred. She also has not provided records that shed further light on these claims to permit the court to determine whether they are material or relevant to the time period of her claim. Further, it appears that Hailey's low back condition was evaluated and diagnosed after the August 2005 hearing before the ALJ[2]. Finally, regarding those conditions which were in existence prior to the ALJ hearing, Hailey provided no explanation why these records were not produced at the earlier hearing. *See **Schmidt***, 395 F.3d at 743; ***Jens***, 347 F.3d at 212 ("The issue before this court is whether the ALJ's findings were supported by substantial evidence, not whether Mr. Jens is disabled.").

Beyond these statements, Hailey's brief contains only a few statements that frame a particular perceived error in the ALJ's decision. Hailey, for instance, challenges the ALJ's conclusion that her diagnosis of carpal tunnel syndrome was not severe. The only evidence in the record regarding carpal tunnel syndrome,

---

[2] It may be that Hailey has made reference to the August 2005 EMG of her spine, which indicated "mild lipping" of the cervical spine and was considered by the ALJ in making his decision.

12

test results from St. Catherine Hospital in August 2005, indicated "no definite evidence of carpal tunnel." In addition, the ALJ, in his hypothetical to the vocational expert, included limitation to fine finger manipulation which illustrated that, though not severe, the ALJ accounted for all impairments with some support in the record. See **Skinner v. Astrue**, 478 F.3d 836 (7th Cir. 2007)(noting the need for the ALJ to consider "the totality of [the claimant's] claimed symptoms.").

As a result, the court construes this objection to the ALJ's decision, as well as Hailey's challenges based upon her experience of pain, as a challenge to the ALJ's credibility determination. This court will sustain the ALJ's credibility determination unless it is "patently wrong" and not supported by the record. **Prochaska v. Barnhart**, 454 F.3d 731, 738 (7th Cir. 2006); **Jens,** 347 F.3d at 213. The ALJ's "unique position to observe a witness" entitles his opinion to great deference. **Nelson v. Apfel**, 131 F.3d 1228, 1237 (7th Cir. 1997); **Allord v. Barnhart**, 455 F.3d 818, 821 (7th Cir. 2006).  However, if the ALJ does not make explicit findings and does not explain them "in a way that affords meaningful review," the ALJ's credibility determination is not entitled to deference. **Steele v. Barnhart**, 290 F.3d 936, 942 (7th Cir. 2002).  Further, "when such determinations rest on objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor], appellate courts have greater freedom to review the ALJ's decision."

13

*Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ must determine a claimant's credibility only after considering all of the claimant's "symptoms, including pain, and the extent to which [the claimaint's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. §404.1529(a); *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004).  If the claimant's impairments reasonably could produce the symptoms of which the claimant is complaining, the ALJ must evaluate the intensity and persistence of the claimant's symptoms through consideration of the claimant's "medical history, the medical signs and laboratory findings, and statements from [the claimant, the claimant's] treating or examining physician or psychologist, or other persons about how [the claimant's] symptoms affect [the claimant]."  20 C.F.R. §404.1529(c); *Schmidt*, 395 F.3d at 746-47 ("These regulations and cases, taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from merely ignoring the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding.").

Although a claimant's complaints of pain cannot be totally unsupported by the medical evidence, the ALJ may not make a credibility determination "solely on the basis of objective medical evidence."  SSR 96-7p, at *1.  *See also Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *Carradine v. Barn-*

14

*hart*, 360 F.3d 751, 754 (7th Cir. 2004) ("If pain is disabling, the fact that its source is purely psychological does not disentitle the applicant to benefits."). Rather, if the

> [c]laimant indicates that pain is a significant factor of his or her alleged inability to work, the ALJ must obtain detailed descriptions of the claimant's daily activities by directing specific inquiries about the pain and its effects to the claimant. She must investigate all avenues presented that relate to pain, including claimant's prior work record, information and observations by treating physicians, examining physicians, and third parties. Factors that must be considered include the nature and intensity of the claimant's pain, precipitation and aggravating factors, dosage and effectiveness of any pain medications, other treatment for relief of pain, functional restrictions, and the claimant's daily activities. (internal citations omitted)
>
> *Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994)

See also *Zurawski v. Halter*, 245 F.3d 881, 887-88 (7th Cir. 2001).

In addition, when the ALJ discounts the claimant's description of pain because it is inconsistent with the objective medical evidence, he must make more than "a single, conclusory statement . . . . The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, at *2. *See Zurawski*, 245 F.3d at 887; *Diaz v. Chater*, 55 F.3d 300, 307-08 (7th Cir.

15

1995)(finding that the ALJ must articulate, at some minimum level, his analysis of the evidence).  He must "build an accurate and logical bridge from the evidence to [his] conclusion." ***Zurawski***, 245 F.3d at 887 (*quoting **Clifford***, 227 F.3d at 872).  When the evidence conflicts regarding the extent of the claimant's limitations, the ALJ may not simply rely on a physician's statement that a claimant may return to work without examining the evidence the ALJ is rejecting.  *See **Zurawski***, 245 F.3d at 888 (*quoting **Bauzo v. Bowen***, 803 F.2d 917, 923 (7th Cir. 1986))("Both the evidence favoring the claimant as well as the evidence favoring the claim's rejection must be *examined*, since review of the substantiality of evidence takes into account whatever in the record fairly detracts from its weight.") (emphasis in original).

The ALJ's decision was based on substantial evidence and was sufficiently, if not perfectly, articulated in his decision. The ALJ supported his conclusion with the evidence of the RFC completed by Dr. Mahawar, Hailey's x-rays which indicated mild conditions, and the testimony of a medical expert who also examined the records. *See e.g.* ***Arnold v. Barnhart***, 473 F.3d 816, 824 (7th Cir. 2007)("Because Dr. Hoffman's opinion was in conflict with the more convincing opinions of the other medical experts, the ALJ was entitled to disregard it.").

In addition, the ALJ also explained why he disregarded contrary statements from Dr. Okolocha, who provided minimal treatment during the relevant period, and Dr. Manyari, who also appears to have had a limited treatment history with Hailey. *See*

16

*White v. Barnhart*, 415 F.3d 654, 658 (7th Cir. 2005).

Finally, the ALJ characterized Hailey's comments regarding her daily activities to support his conclusion. In fact, Hailey's statements were not entirely consistent. In a report filed with her request for a hearing, Hailey indicated that she "takes care of my own personal needs." (Tr. 98) She also stated, consistent with the RFC by Dr. Mahawar, that she walked, but was limited to how far or how fast. However, it is not clear where in the record the ALJ gained support for the conclusion that Hailey testified that she "drives, cooks, cleans and goes shopping." (Tr. 14) In fact, Hailey stated that she did not drive, had assistance with shopping, and cooked much less than she used to. (Tr. 301) However, to the extent this testimony required reconciliation, that task belonged to the ALJ. *See White*, 415 F.3d at 659 ("[T]he reviewing court is not allowed to substitute its judgment for the ALJ's by reconsidering facts, reweighing evidence, resolving conflicts in evidence or deciding questions of credibility.") (internal citations and quotations omitted). The court concludes that the ALJ's determination that Hailey remained capable of limited sedentary work accounts for some limitations based on her testimony and was supported by substantial evidence.

_____

For the foregoing reasons, pursuant to Sentence four of 42 U.S.C. §405(g), the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to close this case.

17

ENTERED this 9th day of April, 2007

                              s/ ANDREW P. RODOVICH
                                 United States Magistrate Judge